THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| VS. | § | CASE NO. 1:23-CR-00270-002 |
| ALEXANDER FAN | § | |

**DEFENDANT'S SENTENCING MEMORANDUM**

TO THE HONORABLE JUDGE OF SAID COURT:

    NOW COMES, Alexander Fan, in the above-styled and numbered cause, by and through his attorney of record, Mark Thering, and files this Sentencing Memorandum, and in support thereof would show the court as follows:

ALEXANDER FAN, PERSONAL INFORMATION

    Mr. Fan is currently 27 years old. He has been a life-long resident of Houston Texas. Mr. Fan is the youngest of three children, his siblings are both in their late 30s. Mr. Fan had been attending the University of Houston part-time since graduating from Clear Brook High School. According to Mr. Fan, he has approximately two semesters left to earn his degree in Business Administration. Mr. Fan is currently employed as a server at several different Asian restaurant and he works 7 days a week. Mr. Fan does plan on returning to school and explains he had withdrawn from classes in 2020 due to suffering from depression. Mr. Fan states, it was about the time of his depression that he also started having a speech impairment (stuttering).

    Mr. Fan's mother and father have been married for 44 years. Mr. Fan currently resides with his parents. Both his parents escaped communist China in 1973 to make a better life in Hong Kong. They remained Hong Kong (working in restaurants) until Mr. Kin Kok Fan was able to

secure a visa to the United States, when several years later he was able to secure legal passage for his wife to join him. They moved to Houston where both became naturalized citizens. Mr. Kin Kok Fan provided for his family by becoming a head chief at several different Asian restaurants. He was eventually able to invest in properties and is currently retired.

POLITICS AND JANUARY 6

Alexander Fan became politically active after several friends convinced him to become a member of Asians for Trump. This is how he became interested in participating in the Trump rally. He and several friends made plans to visit Washington D.C. and attend the Trump rally. They left Houston early January 6, 2020. They were able to tour most of the D.C. area prior to the rally. Their plan was to fly back to Houston the following day. Mr. Fan describes how in the beginning, the rally was going great. There we no issues. Then at some point things just got crazy. Mr. Fan did not at any point knock down any barricade nor did he assault any other person. Mr. does admit to stepping over the barriers and not stopping those persons who were being destructive and violent. At one point, Mr. Fan found himself on the steps of the capital building directly in front of the broken window to Office S202. Mr. Fan then made the conscious effort to access this room. He did not have permission despite his assertions that everyone was saying the police were allowing them to enter. Mr. Fan, while in Office S202 was joined by two other men whom Mr. Fan did not know.

Mr. Fan committed his crime by stepping through the already broken window seal to gain access to Office S202 where he remained until there was a knock at the door and it was Mr. Fan who proceeded to open and allow the Capital police entry. There is a letter written by Mr. Fan's father, Kin Kok Fan, where he mentions hearing Alex rendition of what had happened that day,

2

specifically how Alex, while inside Office S202, had helped pick up pieces of broken glass and prevented another person from reaching through the broken window to take a laptop computer. As an officer of the Court, I can attest to having reviewed most of the relevant video of that time frame and the video has audio which you can hear bystanders standing outside that office telling the Capital police, who had gained access to the Office S202, that Mr. Fan was trying to clean up the broken glass. Also, apparent in the video is Mr. Fan's complete cooperation with the Capital police including placing his wrists together to be handcuffed without being asked. Mr. Fan was never handcuffed, only escorted out of the building by the Capital police. Counsel makes mention of this to help put Mr. Kin Kok Fan's statement in perspective and to add to the validity of that statement, but not to minimize Mr. Fan's criminal behavior.

After being escorted out of the building, Mr. Fan returned to his hotel room and traveled back to Houston the following day as planned. When he arrived home, he did try to downplay his role on January 6 to his family, but upon eventually hearing everything that actually occurred that day, Mr. Fan is no longer participating member of Asians for Trump. He became very non-political and thought everything was behind him. Until July 13, 2023, when Task Force Officer Reggie Broughton and other FBI agents served an arrest and search warrant to Mr. Fan at his parents' home. Mr. Fan was arrested and arraigned the same day and was released on a personal recognizance bond.

## AFTERWARDS

This Honorable Court has permitted Mr. Fan to remain out on bond during the pendency of this case. While on bond, Mr. Fan has maintained employment at three different Asian restaurants. According to his Pre-Trial Officer, Ms. Troiani, Mr. Fan has committed no infractions

3

and has maintained total compliance of all bond supervision conditions. Mr. Fan does not consume drugs or alcohol. Mr. Fan has no prior criminal history and in the 3 years after January 6, 2021, Mr. Fan has had no contact with law enforcement other than his arrest for this instant offense.

One letter Counsel was hoping to include, but cannot, would have been from one of the arresting officers, Task Force Officer Reggie Broughton. Officer Broughton was with the FBI during Mr. Fan's arrest here in Houston. Full disclosure, Mr. Broughton and Counsel have been close friends since 1994, which was disclosed to AUSA, Ms. Foster, the same time she disclosed her prior association with your Honor (small world). Mr. Broughton was restricted by policy from expressing his views in writing but gave Counsel permission to convey to the Court his opinion. Mr. Broughton stated that Mr. Fan and his family were extremely cooperative during the investigation and seemed very remorseful. Mr. Broughton felt it was unfortunate Mr. Fan was caught up in the whole ordeal. Mr. Broughton also stated he had previously informed Ms. Foster of these opinions.

Keeping in theme with the FBI and the investigation, Counsel believes it should also be disclosed to the Court some recent developments that have transpired and been made public as of last week. After the FBI agents searched Mr. Fan's residence, Mr. Fan made a formal complaint that he believed $2,500 in cash and several silver bars were missing. As it turns out, FBI Agent Nicolas Williams was indicted in Case No. 4:24-CR-00046; *United States vs. Nicholas Anthony Williams*; In the Southern District of Texas, on January 31, 2024, for the theft of Mr. Fan's belongings. Mr. Fan is very grateful to the Agency for believing him and conducting an investigation. I have discussed this turn of events with Mr. Fan and his family, and they understand it does not change the fact Mr. Fan gained illegal access to Office S202 inside the Capital Building and committed a federal offense. Mr. Fan is not asking to withdraw his plea of Guilty. Counsel

4

only brings this matter to the Court's attention to let the Court decide how to evaluate those circumstances.

SENTENCING

As counsel for Mr. Fan, I have read the sentencing memorandum prepared and submitted by Attorney Kevin J. Fitzgerald who represents the co-defendant, Mr. Juan Rodriquez. Though our clients have different pasts, I would like to adopt Mr. Fitzgerald's description of minimally sufficient sentence, specifically starting with; whereby the Court must consider the factors of punishment, deterrence, protection of the public, and rehabilitation when determining a sufficient but not greater than necessary sentence. 18 U.S.C. Sec 3553 (a). While a prison sentence plainly punishes a person for misconduct, a sentence without incarceration can also sufficiently exact punishment. For Mr. Fan, a period of probation fairly supports 18 U.S.C. § 3553(a).

A period of probation is punishment. Congress has provided probation as a punishment in the federal sentencing scheme. See generally, 18 U.S.C. §§ 3561 and 3583. The origin of probation stems from the idea/concept that alternatives to incarceration may produce greater benefits to society in some cases. While sentences of incarceration are inherently more severe than sentences of probation, offenders on probation are nonetheless subject to conditions that substantially restrict their liberty. See *Gall v. United States*, 552 U.S. 38, 48 (2007), citing *United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'") (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987).

> [P]robation is not an act of leniency. Probation is a substantial restriction of freedom, it is not forgiveness, and it is not an endorsement of the offense. The Defendant will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about

5

significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer ... the Court. Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term.

*United States v. Gall*, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005) (citation omitted).

A probationary term also promotes the other § 3553(a) sentencing objectives of deterrence, protection of the public, and rehabilitation. Mr. Fan will not be able to make many of the important decisions in his life without the involvement of his probation officer. He will be required to comply with his release conditions or face a prison sentence. Close personal oversight from a probation officer provides a distinct deterrent. It also helps to ensure that the probationer does not reoffend. And a period of supervision will give Mr. Fan access to support and programs to aid his rehabilitative path should he need those services.

The preceding paragraphs were obtained from Attorney Fitzgerald with his permission.

PRAYER

If placed on probation Mr. Fan would be successful. He never had a propensity toward criminal behavior and in all appearances he never will. If there are any violations of his probation, as the Court is aware, Mr. Fan can still be subjected to incarceration. In the numerous times I have met with Mr. Fan and his father, he has always been respectful and kind both to me and his father, and I believe this respect and kindness is genuine. Again, it is our hopes and prayers you place Mr. Fan on a term of probation and reserve any incarceration until such time that there are any non-compliance issues.

Respectfully submitted,

//S// Mark Thering
Mark C. Thering
State Bar No. 24010918

1601 Congress  
Houston, Texas 77002  
832-257-7747 Cell  
713-237-1000 Office  
832-940-0393 Fax  
Email: lawring@yahoo.com  
Attorney for Defendant  
**ALEXANDER FAN**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was sent to the Assistant United States Attorney, via electronic filing on February 9, 2024.

//S// Mark Thering  
Mark Thering