UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-CR-00270 (APM) |
| v. : | |
| : | |
| ALEXANDER FAN, : | |
| : | |
| **Defendants** : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Alexander Fan to 21 days of intermittent confinement as a condition of three years' probation. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

**I.     Introduction**

Defendant Alexander Fan, a 27-year-old student, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress' certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than $2.9 million in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

1

Fan pled guilty to violating 18 U.S.C. § 5104(e)(2)(C)(i) – entering and remaining in a room in the Capitol Building. The government's recommendation is supported by the amount of the time that the defendant spent on Capitol grounds, and his decision to climb into an office of the Capitol Building through a broken window when he saw that the doors were closed.

The Court must also consider that Fan's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Fan's crime support a sentence of 21 days of intermittent confinement as a condition of three years' probation.[2]

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 24 (Fan Plea Agreement) at ¶¶ 1-7.

*Fan's Role in the January 6, 2021 Attack on the Capitol*

Fan flew to the Baltimore-Washington, International Airport from his home in Houston, Texas in the early morning hours of January 6, 2021. He arrived on the D.C. Mall later that morning to attend the "Stop the Steal" rally at the Ellipse.

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

[2] In this recommendation, the government takes into consideration not only the aggravating circumstances of his climbing through a broken window into a clearly-occupied office, and staying in that office for approximately 30 minutes, but also the mitigating circumstances, which include his remorse, his cooperation with the FBI, and his role as a victim and witness in a related matter.



*Exhibit 1 -Fan (circled in yellow) walking to the Trump rally at the Ellipse before dawn*[3]

Fan was in the enclosure at the Ellipse for the Trump rally.



*Image 2 - Fan (circled in yellow) in front of the stage on the Ellipse*[4]

After Donald Trump's speech, Fan walked toward the U.S. Capitol, where he was met with barricades and fencing, which made it clear that the Capitol grounds were restricted.

---

[3] https://archive.org/download/PAMajgWaGJA9HjDJd/10158752169603286.mpeg4 Timecode: 14:48.

[4] DIRECTO EEUU | Trump se dirige a sus seguidores desde Washington https://www.youtube.com/watch?v=eTEgetNSHhY&t=3355 Timecode: 55:55



*Image 3 – Fan (circled in yellow) in the crowd near the
U.S. Capitol Building with the barricade in the foreground*[5]

Fan passed the barricades and walked with other protesters onto the West Lawn and West Plaza, towards the U.S. Capitol Building ("Building"). Fan saw the torn scaffolding, but he did not turn around and leave; he instead ascended the steps towards the Capitol Building.



*Image 4 - Fan (yellow rectangle) standing next to the torn scaffolding on the West Front*[6]

---

[5] LetFreedomReignMedia
https://archive.org/details/SRh7gaGQgDzfn5LYr/SRh7gaGQgDzfn5LYr.jpg
[6] https://archive.org/details/wZyZrvcNH79KiRNsM/wZyZrvcNH79KiRNsM.jpg

Fan was on the Northwest riser near the Capitol, where he had a bird's eye view of the chaos unfolding below, as law enforcement officers attempted to stem the tide of protesters coming onto the grounds and into the Building.



*Image 5 – Fan, standing on the risers with other rioters[7]*

By late afternoon, Fan had made his way to the other side of the Capitol, to the East Portico door.

---

[7] https://archive.org/download/rfjrfGaB4fZe53dyAWPPJvAK7hdjywMSCQ/IMG_0298.JPG



*Image 6 – Fan standing in front of the closed door, behind another Jan. 6 defendant, Jacob Chansley[8]*

The East Portico doors were closed. Instead of leaving, Fan climbed into Office S202 through a window, whose panes had been broken out by other rioters earlier in the day. As reflected in Image 7 below, the window is located to the right of the main Rotunda Door entrance to the Building:



*Image 7 – Fan entered through the window behind the pillar circled in red*

---

[8] https://archive.org/download/BzjRFNhKvjPnc9zsR/Stephen_Ignoramus_YouTube.mpeg4 Timecode: 5:37:37

Office S202 was an office used by Senator Schumer's staff in the Capitol. Given the papers, pens and computers on the desks, the office was clearly in use just prior to the break-in. At the time Fan entered, through the shattered window, he knew that he was not supposed to be in that office. Once inside the Office, Fan took a selfie with his phone.



*Image 8[9]*

At around 4:00 p.m., U.S. Capitol Police (USCP) officers, who were trying to clear the Capitol, heard voices inside Office S202. They tried to open the door, but it was locked. Officers knocked on the door. Fan was inside the Office, along with co-defendant Juan Rodriguez and one additional man. After about 20 to 30 minutes, one of the three men inside unlocked the office door, and the officers gained access to Office S202.

Once inside, officers found Fan and his co-Defendant Rodriguez and saw glass from the shattered windowpanes littering the floor. Below is an image taken from outside the window

---

[9] Extracted from Fan's phone pursuant to a search warrant

looking into the office showing Fan and USCP officers in Office S202 soon after the officers gained entry:



*Image 9 – Fan (circled in yellow) inside Office S202, surrounded by computers, lamps, framed pictures*[10]

At around 4:25 pm, officers escorted Fan, Rodriguez and a third man out of Office S202, through the Rotunda, and out the door.

---

[10] https://archive.org/download/KpPQ68YwiDN3a9ujm/PATRIOTS_CLEAN_UP_CAPITOL.mpeg4
Timecode: 1:28


*Image 10 – Fan and Rodriguez (circled in red) being escorted out of Office S202[11]*


*Image 11 – Fan and Rodriguez (circled in red) being escorted out of the Rotunda[12]*

By the time Fan left the Capitol grounds, he had been there for hours.

*Fan's Interview with the FBI*

Before he was charged, Fan voluntarily spoke to the FBI and turned over his phone in May 2021. Fan also spoke to the FBI post-arrest in July 2023. Fan admitted to being present at the

---

[11] USCP CCTV
[12] USCP CCTV

Capitol on January 6, 2021, stating he was there to support Trump. Fan identified himself as the individual in the red hat inside Office S202 and expressed remorse for his actions that day.

At the time that Fan was arrested, the FBI also executed a search warrant at his home. The next day, Fan reported to the FBI that some items --including cash and silver bars-- had gone missing from his bedroom. These items were not seized pursuant to the warrant. Fan has since cooperated with the FBI, and a law enforcement officer has since been indicted for the theft.

*The Charges and Plea Agreement*

On August 10, 2023, the United States filed a five-count Information against Fan for Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1) (Count 1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2) (Count 2); Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 3); Enter and Remain in a Room in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C)(i) (Count 4); and Obstruct and Impede Passage in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(E) (Count 5). On September 13, 2023, pursuant to a plea agreement, Fan pled guilty to Count 4 of the Information, entering and remaining in a room in the Capitol Building. As part of his plea agreement, Fan agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Fan now faces sentencing for violating 40 U.S.C. § 5104(e)(2)(C)(i). As noted by his plea agreement and the U.S. Probation Office, Fan faces up to six months of imprisonment and a fine of up to $5,000. He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense

is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 21 days of intermittent confinement as a condition of three years' probation. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Fan's participation in this attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Fan, the absence of violent or destructive acts is not a mitigating factor. Had Fan engaged in such conduct, he would have faced additional criminal charges.

The most important aggravating factors in Fan's case are:

(1) Fan was on the Capitol Grounds for hours before entering Office S202.

(2) Seeing that the doors to the Building were closed, Fan chose to climb through a broken window into a legislator's private office.

11

(3) Fan stayed in the office, behind a locked door, for approximately 30 minutes as USCP officers attempted to gain entrance and clear out the Capitol building.

### B. Defendant's History and Characteristics

Fan has no Criminal History. ¶¶ 32-37. No other significant information is relayed in the PSR.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233 (ABJ), Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by these defendants. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. *See United States v. Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a legitimate protest. *See United States v. Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights."). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

In his interviews with the FBI, Fan has proven cooperative and remorseful throughout these proceedings.  Nonetheless, Fan's multitude of bad decisions on January 6, including his decision to climb through a broken window and enter a private office space, take jubilant selfies in that office space, and then remain behind locked doors for nearly 30 minutes as police tried to clear the Capitol building, speak to the need for a period of intermittent incarceration for specific deterrence.

//

//

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[13] This Court must sentence Fan based on his own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

Fan pled guilty to Count 4 of the Information, charging him with Entering and Remaining in a room in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(C)(i). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

In *United States v. Jeremiah Carollo*, 22-cr-00044-APM, the defendant pled guilty to violating 5104(e)(2)(G). Like Fan, Carollo entered the Capitol through a broken window and was truthful and sincere in his remorse. Unlike Fan, Carollo coaxed his co-defendants to enter the building and walked around inside the building, but he was only in the building 15 minutes, and he did not hide inside a locked office. For his actions, this Court sentenced Jeremiah Carollo to 21 days' confinement as a condition of one-year probation.[14] *See also United States v. Ronald*

---

[13] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

[14] The Court sentenced co-Defendants Anthony Carollo and Cody Vollan to one year of probation with no period of incarceration.

*Andrulonis,* 23-cr-85 (BAH) (Andrulonis, like Fan, observed rioters assaulting officers, entered a Senator's private office and assisted in a separate criminal investigation. Unlike Fan, Andrulonis showed little remorse for his actions. Judge Howell imposed 14 days of intermittent confinement and 60 days location monitoring as part of three years' probation.)

V.     **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[15] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Fan would pay $500 in restitution, which reflects in part the role Fan played in the riot on January 6.[16] ECF 25 (Plea Agreements) at ¶ 11. As the plea

---

[15] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[16] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can

agreements reflect, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 7, 2023. *Id.* Fan's restitution payments must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* ECF 31 (PSR) at ¶ 67.

## VI.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence each Defendant to 21 days of intermittent confinement as a condition of three years' probation. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Fan's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   s/ *Alexandra F. Foster*
ALEXANDRA F. FOSTER
Assistant United States Attorney
D.C. Bar No. 470096
Detailed to the D.C. U.S. Attorney's Office
Washington, DC  20530
Alexandra.Foster@usdoj.gov
(619) 546-6735

---

be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).